RICKY FACKRELL, )
)
        Petitioner, )
)
v. )     No. 1:23-cv-00119
)
UNITED STATES OF AMERICA, )     **CAPITAL 2255 PROCEEDINGS**
)
)
        Respondent. )

## REPLY RE: MOTION TO INSPECT AND DUPLICATE COURT RECORDS

## I.    INTRODUCTION

We find ourselves in an unusual situation. The district court granted Mr. Fackrell's unopposed motion "to view and duplicate all records in possession of the Court related to this matter—including … all records related to the selection of the jury venire and jury selection."[1] The district court then provided several responsive records.[2] Several months later, after defendants in a separate capital trial held before the same district court alleged that an unlawful jury selection process resulted in the underrepresentation of racial minorities,[3] the district court informed

---

[1] Unopposed Motion to Inspect and Duplicate Court Records, *U.S. v. Fackrell*, 1:16-cr-26 (E.D. Tex. Sept. 1, 2022), Doc. No. 779; Amended Order, *U.S. v. Fackrell*, 1:16-cr-26 (E.D. Tex. Sept. 13, 2022), Doc. No. 783 [hereinafter "District Court Order"] (ordering that Mr. Fackrell's "habeas team may also view and duplicate records related to the selection of the jury venire and jury selection").

[2] Doc. No. 13-2 (Declaration of Satyra Deaver, dated Feb. 22, 2023).

[3] *See* Petitioners' Joint Motion and Memorandum in Support of Motion for Recusal, *Snarr v. U.S.*, 1:13-cv-724 (E.D. Tex. Jan. 25, 2023), Doc. No. 146 [hereinafter "Snarr/Garcia Recusal Motion"].

Mr. Fackrell that it had learned of additional records related to the jury venire.[4] At the district court's direction,[5] Mr. Fackrell filed a supplemental request for those records.[6] In that supplemental request, Mr. Fackrell noted detailed particular records "related to the selection of the jury venire" that he sought.[7] The government did not (and does not) oppose Mr. Fackrell's supplemental request—but now mischaracterizes that request as an overly broad "discovery request" predicated on untimely and unsupported claims.[8]

Mr. Fackrell addresses the government's mischaracterizations below.

## II. DISCUSSION
### A. The parties agree that this Court has the discretion to grant Mr. Fackrell's request.

The government agrees with Mr. Fackrell that "[t]he Court has discretion to give litigants access to its own records"—meaning "the Court may exercise discretion to release its documents to Fackrell."[9] The district court recognized this discretion when it granted Mr. Fackrell's original request and provided records. The district court has informed Mr. Fackrell that further records related to the selection

---

[4] Doc. No. 13-4 (Email from Leigh Lyon, dated Feb. 6, 2023).

[5] *See* Doc. No. 13-5 (Email from Leigh Lyon, dated Feb. 7, 2023).

[6] Doc. No. 13 (Motion to Inspect and Duplicate Court Records, dated June 30, 2023) [hereinafter "Supplemental Motion"]. Mr. Fackrell filed his first request for jury records in his criminal proceeding because his habeas proceeding had not yet commenced; Mr. Fackrell filed his Supplemental Motion in his habeas proceeding as "a motion under Sec. 2255 is a further step in the movant's criminal case and not a separate civil action[.]" Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 1, Advisory Committee Note.

[7] *Id.* at 6–14.

[8] Doc. No. 25 (Corrected Response to Motion to Inspect and Duplicate Court Records, dated Sept. 8, 2023) [hereinafter "Corrected Response"] at 6, 12.

[9] Corrected Response at 1, 12.

of the jury venire exist, and Mr. Fackrell's supplemental request details the particular records he seeks.[10]

### B. The law favors access to judicial records.

Both the common law and the First Amendment guarantee the right to inspect and copy judicial records. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597 (1978). This right of access "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness," *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (cleaned up), and is rooted in transparency, *Richmond Newspapers*, 448 U.S. at 572 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). Openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 508 (1984).

The Fifth Circuit has recently taken the Supreme Court's teachings to heart and stressed the right of access to judicial records—noting this principle dates to Roman times and quoting the philosopher and jurist Jeremy Bentham's observation

---

[10] The district court has provided some similar documents to defendants in separate habeas proceedings. *See* Snarr/Garcia Recusal Motion, Attachment 6 (Letter from U.S. District Clerk David J. Maland) at 56–58. While the defendants in that case did not receive "certificates describing the method of random selection [that] are to be provided to the Chief Judge," they report that Sutera Data Systems ("the data-processing firm contracted by the Court to help facilitate venire selection") informed them that it had such certificates "from 2013 onwards." *See* Snarr/Garcia Recusal Motion at 8, 11.

that "Publicity is the very soul of justice." *Binh Hoa Lea v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021). In the same case, the Fifth Circuit recognized that "the judiciary's institutional legitimacy depends on public trust" and that "[p]ublic trust cannot coexist with a system wherein important judicial decisions are made behind closed doors[.]" *Id.* (cleaned up).

The documents Mr. Fackrell seeks are important to maintaining the judiciary's institutional legitimacy. They would allow Mr. Fackrell to understand how his jury venire was created—and how it is that the jury charged with deciding whether he lives or dies was drawn from a pool that significantly underrepresented racial minorities. The government offers no reason why that information should be kept behind closed doors.

Rather than suggesting any rationale for why the requested jury records should be hidden away, the government mischaracterizes Mr. Fackrell's request as a "discovery request." This is an attempt to shift focus away from the question of whether there is any reason to keep these records behind closed doors—and instead to draw the Court into the question of whether (and when) discovery might be appropriate in Mr. Fackrell's habeas proceedings. This is unnecessary. There is no dispute that this Court has the discretion to grant Mr. Fackrell's request, and the government offers no good reason why the Court should not exercise that discretion.

## C. The government mischaracterizes Mr. Fackrell's supplemental request as a "discovery request."

The government refers to Mr. Fackrell's supplemental request as a "discovery request," but this is inapt.[11] As the Supreme Court recognized well over a century ago, discovery "includes only facts or papers which the party or witness is compelled by subpoena, interrogatory, or other judicial process to disclose"—and does not encompass "documents voluntarily given." *Tucker v. United States*, 151 U.S. 164, 168 (1894).

The parties agree that the Court has discretion to give litigants access to its own records—meaning the parties agree that the requested records may be "voluntarily given." Mr. Fackrell's request that those documents be "voluntarily given" is therefore not a discovery request.

The district court did not treat Mr. Fackrell's original request for records related to the selection of the jury venire as a discovery request. The government's current attempt to reframe Mr. Fackrell's supplemental request as a "discovery request" (and its suggestion that some such records "related to the selection of the jury venire" should not be provided) essentially asks this Court to walk back the district court's prior order stating that such documents are to be provided.

## D. Because Mr. Fackrell's request is not a discovery request, Rule 6's requirement of "good cause" does not apply.

When suggesting that this Court should not grant Mr. Fackrell's request, the government cites to Rule 6 of the Rules Governing Section 2255 Proceedings for the

---

[11] *See* Corrected Response at 6.

United States District Courts.[12] This rule provides, in relevant part: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." The government argues Mr. Fackrell "must show good cause for discovery"—but because Mr. Fackrell is not seeking to conduct discovery, he need not show good cause.[13]

The government also argues this Court "should consider the stage of the proceeding."[14] This is an argument that, as discovery is governed by Rule 6, any discovery grants should follow the preliminary consideration of the habeas motion (Rule 4) and any potential answer and reply (Rule 5).[15] But, again, Rule 6 does not apply to Mr. Fackrell's request because it is not a discovery request. There is therefore no requirement that the Court hold off on providing the requested records.

### E. While Mr. Fackrell need not show "good cause," he has established the underrepresentation of racial minorities in the jury wheel.

In addition to alleging that Mr. Fackrell has failed to provide "good cause" under Rule 6, the government suggests Mr. Fackrell has provided no reason why this Court should provide the requested documents. The government informs the Court that Mr. Fackrell's habeas motion "notes no anomalies in the venire from which his jury was selected and points to no facts indicating a problem with selection of names for the jury wheel."[16] This is incorrect.

---

[12] Corrected Response at 4–5.
[13] Corrected Response at 7.
[14] Corrected Response at 1.
[15] *See, e.g.,* Order at 1, *Garcia v. U.S.*, 1:13-cv-723 (E.D. Tex. Jan. 23, 2017), Doc. No. 79.
[16] Corrected Response at 6 (citing Doc. No. 19 (Motion for Collateral Relief to Vacate, Set Aside, or Correct Sentence and for a New Trial) [hereinafter "Habeas Motion"] at 31–32).

**1. Mr. Fackrell's habeas motion notes anomalies in the venire.**

In his habeas motion, Mr. Fackrell informs the court that, based on "a review of the races and ages of the jury pool for [his] case," it is apparent that his jury wheel was marked by "a significant underrepresentation of distinctive groups in the community, including Blacks, Latinos, and young persons."[17] The government is therefore incorrect in its statement that Mr. Fackrell's habeas motion "notes no anomalies in the venire."[18] Mr. Fackrell has explicitly noted anomalies in the venire.

The government proceeds to cite to Fifth Circuit cases for the proposition that "conclusional allegations are insufficient to warrant discovery," *United States v. Webster*, 392 F.3d 787, 801–02 (5th Cir. 2004), and that "'fishing expeditions' are not permitted under the guise of discovery," *United States v. Fields*, 761 F.3d 443, 478–79 (5th Cir. 2014).[19] Putting aside the issue that Mr. Fackrell's request is not a discovery request, the government's chosen cases are inapt. Both cases rely on and cite to *Ward v. Whitely*—a case where the "venire was half back and half white" and it was not disputed that "the eligible population had essentially the same racial composition." 21 F.3d 1355, 1367 (5th Cir. 1994). Here, Mr. Fackrell's venire significantly underrepresented racial minorities in a way that did not reflect the eligible population. His allegations are not conclusional, and this is not a "fishing

---

[17] Habeas Motion at 32. This review was conducted by expert statistician Jeffrey Martin, whose findings are further detailed below.

[18] The government is likewise incorrect when it states that "the sole basis for Fackrell's claim is 'information and belief' gathered from the joint motions to recuse filed in Snarr and Garcia." Corrected Response at 6. Mr. Fackrell's claim is based on a review of the jury pool in his own case.

[19] Corrected Response at 4–5.

expedition." It is a request for the documents that will allow him to understand how his jury wheel came to significantly underrepresent racial minorities.

### 2. Mr. Fackrell's jury wheel underrepresented racial minorities— and it was not by chance.

Jeffrey Martin—an expert statistician who has worked on more than 70 federal cases in more than 25 districts—has analyzed Mr. Fackrell's jury wheel and detailed the anomalies in the venire.[20]

Mr. Martin reports that Mr. Fackrell's jury wheel overrepresented the Caucasian population and underrepresented the Black population in a statistically significant manner.[21] And that the jury wheel underrepresented the Latino population by nearly two standard deviations, which approaches statistical significance and would be statistically significant were the sample size larger.[22]

The government makes no attempt to explain these anomalies. Instead, the government quotes from the district's Jury Plan, which states that "[n]ames are randomly taken from the voter registration list," "entered into a pool and then randomly summoned."[23] But a Jury Plan saying that veniremen should be selected at random from voter rolls does not tell us anything at all about how veniremen were selected from those voter rolls—so we cannot assess whether the process was in fact random. And there is good reason to doubt the process was random, as Mr. Martin concludes that neither the overrepresentation of the Caucasian population

---

[20] Exhibit A (Declaration of Jeffrey Martin, dated Sept. 14, 2023) at ¶ 3.
[21] Exhibit A at ¶¶ 33-34.
[22] Exhibit A at ¶ 35.
[23] Corrected Response at 5.

nor the underrepresentation of the Black population could be the result of chance—rather, he concludes they are "the result of a systematic process that over-represents White persons who are non-Hispanic or Latino" and "a systematic process that under-represents Black or African-American persons."[24]

The government would have this Court simply trust that the selection of veniremen was entirely random (never mind the evidence that racial minorities were underrepresented in a way that cannot be explained by chance) simply because the Jury Plan says that is the way it should be done. The government's reliance on the Jury Plan is particularly confusing considering its concession that the Jury Plan was not followed.

### 3. The government does not dispute that Mr. Fackrell's jury wheel was created in violation of the district's Jury Plan.

The government does not dispute Mr. Fackrell's allegation that the creation of Mr. Fackrell's jury wheel violated the district's Jury Plan.[25] The Jury Plan requires the Beaumont division to maintain a single Master Jury Wheel and to draw all jury panels from that one Master Jury Wheel.[26] This provision of the Jury Plan was not followed for Mr. Fackrell's trial, as a jury wheel was built "specially" for his case.[27] The government notes that "the District's jury administrator advised Fackrell that a *new* jury wheel was being populated for his case[.]"[28] The creation of

---

[24] Exhibit A at ¶¶ 33–34. Martin also concludes that Mr. Fackrell's venire overrepresented persons aged 40 to 69 and underrepresented persons aged 18 to 39 in a statistically significant manner. *Id.* at ¶¶ 43–44.

[25] *See* Supplemental Motion at 3–4 (referencing Habeas Motion at 41–42).

[26] *See* Supplemental Motion at 3.

[27] *See* Supplemental Motion at 4 (quoting then-Jury Administrator Beth Harper).

[28] Corrected Response at 5 (emphasis added).

this "new jury wheel" for Mr. Fackrell's trial violated the Jury Plan—as the government implicitly concedes.

Mr. Fackrell seeks to understand how this "new" wheel, built "specially" for his case, was constructed. He notes that in separate capital proceedings before the same district court (the Snarr and Garcia proceedings), the defendants have alleged that their jury wheel was "selected by ordering prospective jurors by county and then sequentially by voter ID number and then selecting the first 2,200 names in ascending order of voter ID"—a manner that appears neither random nor in accordance with the Jury Plan.[29]

### 4. The requested records are necessary to understand why Mr. Fackrell's jury wheel underrepresents the Black population.

Mr. Martin explains that, in order "to review the construction and implementation of the Master Jury Wheel and Qualified Jury Wheel that was used to select Grand Jurors and Trial Jurors in [Mr. Fackrell's] case," he "require[s]" the requested records.[30] And he has explained that he requires "all" of the requested records "in order to analyze the demographic and systematic factors in the jury system in the Eastern District of Texas."[31] He notes that the requested records are "common to other reviews of Federal jury wheels that [he has] been asked to perform"—and that, in his extensive prior experience, he has been provided such

---

[29] Snarr/Garcia Recusal Motion at 5. As the defendants note, because "voter ID numbers are assigned sequentially and chronologically, this is obviously not a random method of selection, and it produced a wheel that was significantly unrepresentative as to race, ethnicity, and age." *Id.* at 4.
[30] Doc. No. 13-6 (Declaration of Jeffrey Martin, dated Mar. 6, 2023) [hereinafter "First Martin Declaration"] at ¶¶ 4–5.
[31] First Martin Declaration at ¶ 12.

records "in connection with [his] work as an expert in similar challenges brought on behalf of federal criminal defendants in other federal jurisdictions."[32]

Mr. Fackrell is not seeking the extraordinary. He simply asks for the documents routinely provided to experts in similar challenges.

### 5. Mr. Fackrell has made a prima facie case for relief on his underlying claims.

Despite Mr. Fackrell noting the significant underrepresentation of racial minorities in his jury wheel and the failure to follow the Jury Plan when creating that jury wheel, the government argues Mr. Fackrell "cannot show good cause for discovery of the documents he seeks because the claim to which they relate must be denied, both as untimely and as substantively deficient."[33] That is, the government argues Mr. Fackrell's underlying claims (of violations of the Jury Selection Service Act [JSSA], the Fifth Amendment, and the Sixth Amendment) are time-barred or unmeritorious.[34] Not so.

### a. JSSA

Mr. Fackrell has alleged that the creation of his jury wheel violated the JSSA and that his trial counsel rendered ineffective assistance by failing to bring a JSSA claim at trial.[35] While the government argues the JSSA claim is untimely—a

---

[32] First Martin Declaration at ¶ 7.
[33] Corrected Response at 12.
[34] Mr. Fackrell notes that he filed his Habeas Motion "with the understanding that an amendment will be allowed" and that such amendment "will provide further factual development for the claims identified[.]" Habeas Motion at 1.
[35] Habeas Motion at 31–32.

11

position Mr. Fackrell refutes—the government fails to address the ineffective assistance of counsel claim.[36]

The government can make no argument regarding the ineffective assistance of counsel claim because it is timely and meritorious. The underrepresentation of racial minorities was evident from a review of the jury pool, and it was therefore objectively deficient performance for trial counsel not to bring a JSSA challenge. Notably, the government makes no argument that the JSSA challenge would have failed had trial counsel acted—only that the claim is now untimely.

A petitioner makes a prima facie case meriting discovery "where specific allegations before the court show reason to believe that the petitioner may, *if the facts are fully developed*, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (emphasis added). Mr. Fackrell seeks records that would allow him to develop the facts and demonstrate the reasonable likelihood that the outcome of the proceeding would have been different had trial counsel made the JSSA claim. Mr. Martin's conclusion that the underrepresentation of racial minorities cannot be explained by chance suggests Mr. Fackrell's JSSA claim would have prevailed had he brought it at trial.

### b. Sixth Amendment

Mr. Fackrell has alleged that the underrepresentation of racial minorities in his jury wheel violated the Sixth Amendment's fair cross-section requirement.[37] A prima facie Sixth Amendment claim requires underrepresentation of a distinctive

---

[36] Corrected Response at 7–9, 12.
[37] Habeas Motion at 32.

group due to the systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Here, Black individuals are a distinctive group—and Mr. Martin concludes that group was underrepresented due to their systematic exclusion in the jury selection process.

The government notes that the district court disposed of the Sixth Amendment claim brought in the Snarr and Garcia proceedings—but that was because, as the district court highlighted, defendants demonstrating underrepresentation in only one venire have been found not to have made out a Sixth Amendment claim.[38]

Mr. Fackrell's Sixth Amendment claim is not so easily dismissed, as the evidence of racial underrepresentation is now beyond a single venire. Mr. Fackrell has alleged racial underrepresentation in his jury wheel, just as Mr. Garcia and Mr. Snarr did concerning their jury wheel. Special wheels were created in both cases, and both of those special wheels underrepresented racial minorities—and there is good reason to believe those were not the only special wheels created in the district. As the Eastern District's Operations Manager informed Mr. Snarr, "Having a separate wheel for death penalty cases is not unusual[.]"[39] In at least two cases before the district court—cases that resulted in four death sentences—jury wheels created in violation of the Jury Plan resulted in significant underrepresentation of racial minorities. This is systematic exclusion.

---

[38] Corrected Response at 9–12.

[39] Snarr/Garcia Recusal Motion, Attachment 4 (Email from Terri Splawn, dated Nov. 3, 2020) at 48.

### c. Fifth Amendment

Mr. Fackrell has alleged that the underrepresentation of racial minorities in his jury wheel violated the Fifth Amendment's equal protection guarantee.[40] The government again turns to the Snarr and Garcia proceedings and argues that the district court disposed of their Fifth Amendment claims by noting that such a claim "requires the defendant to show purposeful or intentional discrimination."[41] Mr. Fackrell has alleged such discrimination by making his Fifth Amendment claim, and he requires the requested records to fully develop the facts.

### F. Mr. Fackrell's request is not overly broad.

The government describes Mr. Fackrell's supplemental request as "much broader than his first motion" and characterizes the supplemental request as "seeking to inspect and duplicate a remarkably broad range of court records[.]"[42] This is a mischaracterization.

### 1. The supplemental request does not extend beyond records already ordered released.

The district court already ordered the release of "records related to the selection of the jury venire and jury selection."[43] Mr. Fackrell's supplemental request seeks records that are "in possession of the court" and that are "related to the selection of the jury venire." The government does not argue otherwise. In fact, the government offers no explanation for its assertion that Mr. Fackrell's supplemental request is "broader than his first motion." It is not.

---

[40] Habeas Motion at 32.
[41] Corrected Response at 11–12.
[42] Corrected Response at 3.
[43] District Court Order.

### 2. The supplemental request does not extend beyond what is required.

The government asserts that Mr. Fackrell's supplemental request covers "a remarkably broad range of court records." But Mr. Fackrell seeks only those records that Mr. Martin has concluded he "require[s] . . . in order to analyze the demographic and systematic factors in the jury system" and to review "the construction and implementation of the Master Jury Wheel and Qualified Jury Wheel that was used to select Grand Jurors and Trial Jurors in [Mr. Fackrell's] case."[44] Mr. Martin has explained why he needs each type of record and explained that courts have provided him with such records in connection with similar challenges in other cases.[45] The government does not respond to any of this. Rather, the government just asserts the request is "remarkably broad" without explanation. A request for the specific records that an expert statistician has explained he requires—and has been routinely granted in other cases—is not overbroad.

### 3. The Court can address any concerns regarding personal information.

The government expresses concern that Mr. Fackrell's supplemental request covers jurors' personal information.[46] But courts are well-equipped to protect such personal information. In granting Mr. Fackrell's initial request, the district court provided documents that had "been redacted by court staff to remove personal information" and emphasized that Mr. Fackrell's habeas team was not to disseminate the records and must return those documents to the court or destroy

---

[44] First Martin Declaration at ¶¶ 4–5, 12.
[45] First Martin Declaration at ¶ 7, Attachment GJ, Attachment TJ.
[46] Corrected Response at 1.

15

them within 30 days of the conclusion of the habeas proceedings.[47] The government does not provide any reason to suggest such measures would be insufficient to protect jurors' personal information.

### III. CONCLUSION

Mr. Fackrell respectfully asks this Court to exercise its discretion to provide the records required to determine how it is that his jury venire underrepresented the Black community in a way that cannot be explained by random chance. The district court has ordered the production of documents related to the selection of the jury venire. And now—when Mr. Fackrell has provided evidence that the Black community was significantly underrepresented on that venire—is no time to walk back that order.

Public trust in the judiciary is built through transparency, and there is no good reason to keep the requested records behind closed doors.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER FOR
THE MIDDLE DISTRICT OF TENNESSEE
CAPITAL HABEAS UNIT

KELLEY J. HENRY
Supervisory Asst. Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax:     (615) 736-5265
Email:   Kelley_Henry@fd.org

BY: /s/ *Kelley Henry*

---

[47] District Court Order.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been served on counsel for the Government by electronic case filing via the PACER CM/ECF system.

*/s/ Kelley Henry*
Date of Service: September 29, 2023