IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RICKY ALLEN FACKRELL, #12324-081 §
§
§ CIVIL ACTION NO. 1:23-cv-119
§
VS. §
§ DEATH PENALTY
§
UNITED STATES OF AMERICA §

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INSPECT AND DUPLICATE COURT RECORDS

Before the court is Movant Ricky Allen Fackrell's *Motion to Inspect and Duplicate Court Records* (document no. 13). The Government filed a response in opposition (document no. 22). Fackrell filed a reply (document no. 32). For the reasons below, the motion is granted in part and denied in part.

I.      Background

Fackrell and his codefendant, Christopher Cramer, were convicted and sentenced to death for the prison murder of a fellow inmate. They jointly appealed their convictions and sentences on numerous grounds, none of which related to the composition of the jury wheel for the grand jury that indicted them or for their petit jury. The Fifth Circuit affirmed. *United States v. Fackrell*, 991 F.3d 589 (5th Cir. 2021). The Supreme Court denied Fackrell's petition for writ of certiorari on March 21, 2022, *Fackrell v. United States*, 142 S. Ct. 1373 (2022), thus starting the limitations period for filing a motion under 28 U.S.C. § 2255.

Even before the Supreme Court denied Fackrell's petition for writ of certiorari, the court appointed counsel for proceedings under Section 2255 (hereinafter "writ counsel"). (*See* Cause No. 1:16-cr-26(02), document no. 771). On September 1, 2022, writ counsel filed a general motion

that sought all records in possession of the court related to this matter, including sealed documents pertinent to Fackrell, original documents filed with or presented to the court outside of the ECF docketing system (including review of a complete docket sheet for sealed and *ex parte* entries, verdict forms, jury notes, and recordings or other materials not in the record), and all records related to the selection of the jury venire and jury selection (including qualification and case-related questionnaires in the original, educational pamphlets provided to the jury, strike lists, and attendance reports). (Cause No. 1:16-cr-26(02), document no. 779). The Government did not oppose, and the court granted the motion. (*Id.* at document no. 783). Fackrell's litigation team visited the court in September and October 2022 and were given access to various records pertaining to his case (Cause No. 1:23-cv-119, document no. 13-3 at 2).

Fackrell filed his Section 2255 motion on March 20, 2023. (Cause No. 1:23cv119, document no. 1 (original motion)), (document no. 19 (motion edited for compliance with court order)). The Government's response is currently due on or before April 5, 2024 (document no. 38).

On June 30, 2023, Fackrell filed a motion seeking to inspect and duplicate a broad range of court records, some for a period of ten years (document no. 13 at 6-13). Fackrell states that the information sought relates to his claim that "the creation of a special jury wheel for his trial violated his constitutional rights, the Jury Selection and Service Act, and the Eastern District's Jury Plan." (*Id.* at 5 ) (citing document no. 1 at 41-42); (*see also* document no. 19 at 31-32 (location of claim in corrected Section 2255 motion)). Fackrell contends that "the requested documents are necessary to evaluate whether any aspect of the venire selection process violated the law." (document 13 at 6).

II.       The Request

     In his request for court records (document no. 13), Fackrell requested the following records

from the court:

GRAND JURY RECORDS

1.  The Jury Plan for the Eastern District of Texas in effect at the time grand jurors were
summoned in this case. This Plan is believed to be the "Plan for the Random Selection of
Jurors for the Eastern District of Texas as amended March 26, 2009."

2.  The jury division or divisions chosen for the grand jury in this case as described in the
Jury Plan Sections 2 and 9.

3.  Any AO-12 form, or JS-12 form created which relates to the District and Divisional
Master Jury Wheels and Qualified Jury Wheels that were used to summon the grand jurors
in this case as required by 28 U.S.C. § 1863(a) and the Jury Plan Section 6.

4.  Any AO-12 form, or JS-12 forms completed in the last ten years.

5.  Any other statistical or demographic analyses produced to ensure the quality and
compliance of the Master Jury Wheels and Qualified Jury Wheels that were used to
summon grand jurors in this case with the Jury Plan Section 1, Jury Selection and Service
Act, and constitutional requirements.

6.  The date when the Master Jury Wheel that was used to summon grand jurors, in this
case, was refilled as described in the Jury Plan Section 6.

7.  The calculation that ensures each county within each division is substantially
proportionately represented as described in the Jury Plan Section 5.

8.  The procedures implemented related to prospective jurors who do not respond to a juror
qualification form or have their juror qualification form returned from the Postal Service
as undeliverable.

9.  The date when grand jurors were summoned in this case.

10.  The number of persons summoned from the Qualified Jury Wheel to be considered as
grand jurors in this case.

11.  The order requesting the drawing of grand jurors in this case.

12. The procedures for persons deferred to a different service date. If so, please describe the procedure used once the deferred juror attends on the deferral date including their order of consideration.

13. The request for the source data (voter registration lists) as described in the Jury Plan Section 4 and the response including the name, agency, and contact information.

14. The name, contact information, and description of work for any vendors who participated in creating the Master Jury Wheel or Qualified Jury Wheel.

15. The general notice described in the Jury Plan Section 6.

16. Any correspondence, specifications, or descriptions, whether internal or with parties outside the court such as vendors, regarding the creation of the Master Jury Wheel or Qualified Jury Wheel.

17. The District and all Divisional Master Jury Wheel data for each division as described in the Jury Plan Section 6 in electronic and accessible form that includes Juror Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County, and Jury Division. This data should include and identify any special or supplemental District or Division Master Jury Wheels.

18. The District and all Divisional Qualified Jury Wheel data for each division as described in the Jury Plan Section 8 in electronic and accessible form that includes Juror Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County, and Jury Division. This data should include and identify any special or supplemental District or Division Qualified Jury Wheels.

19. Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond, or were disqualified or exempted or excused from jury service or qualified for jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Identification Number, whether the form was returned Undeliverable, whether the form was not returned, Reason for Disqualification/Exemption/Excuse/Qualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

20. To the extent it is not supplied otherwise, the information in items #17, #18, and #19 for 2012, 2014, 2016, and 2018 wheels, including any special or supplemental wheels.

21. The Juror Identification Number for persons selected as potential grand jurors in this case.

22. The Juror Identification Number and Pool Number for persons summoned as potential jurors for all purposes from the Master Jury Wheel.

23.  The source of data (Master Source List) in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Section 4 (voter registration lists). The data should include, as available, Voter Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County, and Jury Division.

24.  The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

25.  The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification, or selection as described in the Jury Plan Section 7.

PETIT JURY RECORDS

1.  The Jury Plan for the Eastern District of Texas in effect at the time trial jurors were summoned in this case. This Plan is believed to be the "Plan for the Random Selection of Jurors for the Eastern District of Texas as amended March 26, 2009."

2.  The jury division or divisions chosen for the trial jury in this case as described in the Jury Plan Sections 2 and 9.

3.  Any AO-12 form or JS-12 form created which relates to the District and Divisional Master Jury Wheels and Qualified Jury Wheels that were used to summon the trial jurors in this case as required by 28 U.S.C. § 1863(a) and the Jury Plan Section 6.

4.  Any AO-12 form or JS-12 forms completed in the last ten years.

5.  Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheels and Qualified Jury Wheels that were used to summon trial jurors in this case with the Jury Plan Section 1, Jury Selection and Service Act, and constitutional requirements.

6.  The date when the Master Jury Wheel that was used to summon trial jurors in this case was refilled as described in the Jury Plan Section 6.

7.  The calculation that ensures each county within each division is substantially proportionately represented as described in the Jury Plan Section 5.

8.  The procedures implemented related to prospective jurors who do not respond to a juror qualification form or have their juror qualification form returned from the Postal Service as undeliverable.

9.  The date when trial jurors were summoned in this case.

10.  The number of persons summoned from the Qualified Jury Wheel to be considered as trial jurors in this case.

11.  The order requesting the drawing of trial jurors in this case.

12.  The procedures for persons deferred to a different service date. If so, please describe the procedure used once the deferred juror attends on the deferral date including their order of consideration.

13.  The request for the source data (voter registration lists) as described in the Jury Plan Section 4 and the response including the name, agency, and contact information.

14.  The name, contact information, and description of work for any vendors who participated in creating the Master Jury Wheel or Qualified Jury Wheel.

15.  The general notice described in the Jury Plan Section 6.

16.  Any correspondence, specifications, or descriptions, whether internal or with parties outside the court such as vendors, regarding the creation of the Master Jury Wheel or Qualified Jury Wheel.

17.  The District and all Divisional Master Jury Wheel data for each division as described in the Jury Plan Section 6 in electronic and accessible form that includes Juror Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County and Jury Division. This data should include and identify any special or supplemental District or Division Master Jury Wheels.

18.  The District and all Divisional Qualified Jury Wheel data for each division as described in the Jury Plan Section 8 in electronic and accessible form that includes Juror Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County and Jury Division. This data should include and identify any special or supplemental District or Division Qualified Jury Wheels.

19.  Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted or excused from jury service or qualified for jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Identification Number, whether the form was returned Undeliverable, whether the form was not returned, Reason for Disqualification/Exemption/Excuse/ Qualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

20.  To the extent it is not supplied otherwise, the information in items #17, #18, and #19 for the 2012, 2014, 2016, and 2018 wheels, including any special or supplemental wheels.

21. The Juror Identification Number for persons selected as potential trial jurors in this case.

22. The Juror Identification Number and Pool Number for persons summoned as potential jurors for all purposes from the Master Jury Wheel.

23. The source of data (Master Source List) in electronic form for the Master Jury Wheel used to summon trial jurors in this case as described in the Jury Plan Section 4 (voter registration lists). The data should include, as available, Voter Identification Number, Name, Address, Race, Gender, Hispanic Ethnicity, Date of Birth, County, and Jury Division.

24. The juror qualification and summons forms for persons summoned to potentially become trial jurors in this case.

25. The disposition of each summoned potential trial juror in this case as to excusal, deferment, disqualification, or selection as described in the Jury Plan Section 7.

26. Any documents not specifically named herein but responsive to the request for all records in possession of the court related to the selection of the Master Source List, the Master Jury Wheels for 2014, 2016, and 2018, the grand and petit jury venires selected for this case, and all aspects of jury selection.

(document no. 13 at 6–10).

The court notes that Fackrell's current document request far exceeds the request for records granted by United States District Judge Crone in Cause No. 1:16-cr-26(02), document nos. 779 and 783. The court also takes judicial notice of the issues raised on appeal by Fackrell in *United States v. Fackrell*, Cause No. 18-40598, 991 F.3d 589 (5th Cir. 2021). Fackrell's appeal was silent regarding any statutory or constitutional issue pertaining to the jury service selection of a grand jury or a petit jury; *e.g.*, the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1861–1878, *et seq.*, or Sixth Amendment's fair cross-section of the community guarantee.

Finally, the court takes judicial notice that Fackrell filed a *Motion to Quash Venire Panel and Stay Proceedings* on November 15, 2017. (Cause No. 1:16-cr-26, document no. 138). Fackrell asserted that the Beaumont Division of the Eastern District of Texas uses only voter registration

7

lists to populate its petit jury wheel. Fackrell urged the court to supplement its petit jury wheel list

with the Texas Driver's License List and the Texas Personal Identification Card List. On December

7, 2017, Judge Crone denied Fackrell's motion for failing to carry his burden of demonstrating

that the current petit jury selection procedure violates his constitutional and statutory rights. (*Id.*,

document no. 247).

III.      Discussion and Analysis

   A.      Standards

Section 2255 proceedings are governed by the Federal Rules of Civil and Criminal

Procedure to the extent that these rules are not inconsistent with any statutory provision or any rule

of the *Rules Governing Section 2254 and 2255 Cases*. *See* Rule 12, *Rules Governing Section 2254*

*and 2255 Cases*; *see also United States v. Saenz,* 282 F.3d 354, 355 (5th Cir. 2002) ("Rule 12 ...

authorizes district courts to apply the Federal Rules of Civil Procedure when appropriate and not

inconsistent with applicable statutes or rules."). A § 2255 movant "may invoke the process of

discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge

in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

*United States v. Trevino*, 554 F. App'x 289, 295 (5th Cir. 2014) (quoting *United States v. Webster,*

392 F.3d 787, 801 (5th Cir. 2004) (quoting *Rector v. Johnson,* 120 F.3d 551, 562 (5th Cir. 1997)

(internal quotation marks omitted))).

As the Supreme Court has noted before, "[a] habeas petitioner, unlike the usual civil litigant

in federal court, is not entitled to discovery as a matter of ordinary course."[1] *Bracy v. Gramley,*

---

[1] Fackrell's argument that his motion (document no. 13) is not a motion for discovery is unavailing. This case is a
Section 2255 habeas currently before the court pursuant to 28 U.S.C. § 2255. Fackrell's case is no longer in the same
posture as it was before his conviction and sentencing and appeal to the Fifth Circuit. The *Rules Governing Section
2255 Cases in the United States District Courts* now control the proceedings in this case.

520 U.S. 899, 904 (1997)); *see also Rafiq v. United States*, No. 4:19-cv-050-O, 2020 WL 7009640, at *11 (N.D. Tex. 2020). The requesting party "must provide reasons for the request" and "include any proposed interrogatories and requests for admission and must specify any requested documents." *Lincks v. United States*, No. 3:20-cv-1603, 2021 WL 3828154, at *1 (N.D. Tex. 2021) (citing *Section 2255 Rules*, Rule 6(b)).

Rule 6(a) of the *Section 2255 Rules* allows discovery if a judge finds "good cause" to conduct discovery. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.) (noting that discovery is to be permitted "only if and only to the extent that the district court finds good cause" under the analogous *Rules Governing Section 2254 Proceedings in the United States District Courts*), *cert. denied*, 531 U.S. 957 (2000). Good cause is present when a section 2255 motion "establishes a *prima facie* case for relief." *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 290 (1969)); *see also United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014) (citing *Bracy*, 520 U.S. at 908–09), *cert. denied*, 576 U.S. 1004 (2015). A petitioner demonstrates "good cause" for discovery under Rule 6(a) "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy,* 520 U.S. at 908–09 (internal quotation marks omitted).

Section 2255 was not intended to permit endless litigation on matters already resolved, and for this reason, discovery is properly limited to resolving factual disputes which, if resolved in the movant's favor, would entitle him to relief. *See Murphy*, 205 F.3d at 814. Furthermore, conclusory allegations are insufficient. *Id.* (citing *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004)) ("Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact"). Rule 6(a) of the *Rules Governing § 2255 Proceedings* "does not authorize fishing expeditions." *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir. 1994). "[T]he district

court's decision regarding the availability of discovery is ... committed to the sound discretion of the district court and is reviewed under the abuse of discretion standard." *Clark v. Johnson,* 202 F.3d 760, 765–66 (5th Cir. 2000).

B.      No *Prima Facie* Case for Relief

As good cause for his Motion (document no. 13), Fackrell states that the purpose of his requests is to "facilitate the evaluation of whether the venire selection process for the grand jury responsible for returning the indictment in this case and the petit jury serving at trial was consistent with the policies of the Eastern District of Texas's Jury Plan, the Jury Selection and Service Act, and the Fair Cross-Section Guarantee." (document no. 13 at 2). He states that his objection to the jury wheel is based on "information and belief" from "pleadings filed in habeas proceedings stemming from a separate multi-defendant capital case tried before the same District Court." (document no. 13 at 5) (citing *Garcia v. United States*, Cause No. 1:13-cv-723, document no. 160; and *Snarr v. United States*, Cause No. 1:13-cv-724, document no. 146). The motions to recuse and motions for discovery filed in the *Garcia* and *Snarr* cases do not constitute good cause for discovery to occur in Fackrell's case. He has not established a link between his case and those other two cases to show good cause for discovery to occur here. Moreover, the motions in *Garcia* and *Snarr* were not resolved in the movants favor because of failures to demonstrate an entitlement to relief.

Similarly, Fackrell fails to provide any concrete basis or facts that move his requests from speculative to the realm of reasonable and thereby demonstrate that he is entitled to relief. "Conclusional allegations are insufficient to warrant discovery; the [movant] must set forth specific allegations of fact." *Webster*, 392 F.3d at 802 (quoting *Ward*, 21 F.3d at 1367). Because his allegations are speculative and conclusory, they do not provide "reason to believe that the

10

petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Fields*, 761 F.3d at 480 (quoting *Bracy*, 520 U.S. at 908–09). As such, he does not show "good cause" as required under Rule 6(a).

      C.      <u>Discovery is Unwarranted as His Claims Fail on the Merits</u>

      1.      <u>Procedural Default</u>

In a habeas corpus case, discovery must relate solely to a specifically alleged factual dispute, not to a general allegation. *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). In Claims Six and Seven of his corrected *Motion to Vacate*, Fackrell contends that the grand jury and the venire for the petit jury pertaining to his criminal case were selected in violation of the Eastern District Jury Plan, the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1861–1878, *et seq.*, and the Sixth Amendment fair cross-section guarantee. (document no. 19 at 41–45).

The government asserts that Fackrell's discovery requests are baseless as the JSSA, and the fair cross-section claims are legally without merit and procedurally barred. (document no. 25 at 6–12). Before his criminal trial, Fackrell raised his belief that the court should draw the names for prospective duty for the grand jury and the veniremen from the Texas Driver's License List and the Texas Personal Identification Card List in addition to the Texas Voter's Registration List that is used. (Cause No. 1:16-cr-26, document no. 138). He did not raise any other objection to the jury selection process prior to trial.

Through his requested discovery (document no. 13 at 6–10), Fackrell apparently seeks a means to overcome the alleged procedural default[2] for not raising his JSSA and Sixth Amendment fair cross-section guarantee claims prior to trial. To overcome the procedural default, he must show either (A) cause and prejudice or (B) actual innocence. *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (per curiam); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982) (holding that procedural default is applicable to § 2255 motions);  *Willis*, 273 F.3d at 596 (same).

To establish cause, the movant "must show that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quotation omitted). "A factor is external to the defense if it cannot fairly be attributed to" the movant. *Id.* (quotation omitted). The Supreme Court has not provided "an exhaustive catalog of such objective impediments to compliance with a procedural rule," but "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials, made compliance impracticable, would constitute cause." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (quotation omitted).

To establish prejudice, a movant must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542, 545–46 (5th Cir. 2003). Even if a movant fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default by showing that application of the default would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a movant must prove that "as a factual matter, that he did not commit the crime of conviction."

---

[2] Procedural default occurs when a defendant raises an issue in his § 2255 motion, other than ineffective assistance of counsel, that he could have raised on direct appeal but failed to do so. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

*Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with *new*, reliable evidence—that was *not* presented at trial—and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted) (emphasis added). Fackrell does not discuss procedural default in his motion.

Even if Fackrell could establish cause, he fails to establish prejudice—*e.g.*, that but for the alleged error in the creation of the jury selection wheel, the outcome of the proceeding would have been different. He did not pursue this issue on direct appeal; as such, he clearly did not raise the issue before the Fifth Circuit. He has not shown cause for his failure to pursue and appeal this jury selection issue; nor has he shown that he would suffer prejudice if the court applied default in this case. As such, he cannot overcome procedural default in this manner. Further, he has not shown that he did not commit the crime of his conviction; hence, he may not avail himself of the fundamental miscarriage of justice exception to the procedural default rule regarding this issue. Ultimately, Fackrell's request for discovery fails on the merits.

Moreover, Fackrell's requested discovery will not establish that there has been a substantial violation of the Eastern District's Jury Plan. Whether there has been a substantial violation depends on whether two important general principles have been frustrated: 1) random selection of juror names from the voter lists of the district or division in which court is held; and 2) a determination of juror disqualifications, excuses, exemptions, and exclusions based on objective criteria only. *United States v. Schmidt*, 711 F.2d 595, 600 (5th Cir. 1983). Violation of a local plan is analyzed

in the same manner as the JSSA, that is, by a determination of whether any of the JSSA's policies were frustrated.[3] *Id.*

Furthermore, he has no constitutional right to a randomly selected jury. *United States v. Nelson*, 718 F.2d 315, 319 (9th Cir. 1983) (citing *United States v. Hawkins*, 566 F.2d 1006, 1014 (5th Cir.), *cert denied*, 439 U.S. 848 (1978)). Fackrell's conclusory arguments fail to demonstrate that he is entitled to relief.

### D. Discovery Requests are Foreclosed by the JSSA

Additionally, Fackrell's discovery requests are foreclosed at this point in the proceedings by the JSSA. His grand jury and petit jury selection arguments are precluded by his failure to comply with the statutory mandates of 28 U.S.C. §§ 1867(a)[4] and (e).[5] There is no indication in the record of No. 1:16-cr-26(02) that Fackrell moved to dismiss the indictment or stay the

---

[3] The JSSA seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service. *United States v. Bearden*, 659 F.2d 590, 593 (5th Cir. 1982); 28 U.S.C. § 1861. The JSSA provides that each district court shall devise a written plan to achieve the twin objectives of nondiscrimination and opportunity of service. *Id*. at 593–94. The JSSA also sets out the exclusive methods by which non-compliance may be challenged. *Id*. at 595; *see* § 1867(e).

[4] Section 1867(a) provides:

> In criminal cases, before the *voir dire* examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a).

[5] The JSSA mandates in § 1867(e) states:

> The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin, or economic status in the selection of persons for service on grand or petit juries.

28 U.S.C. § 1867(e).

proceedings against him on the basis of substantial failure to comply with the JSSA. As noted above, Fackrell did file a *Motion to Quash Venire Panel and Stay Proceedings* (Cause No. 1:16-cr-26, document no. 138) on the basis that the Beaumont Division of the Eastern District of Texas does not use the Texas Driver's License List and the Texas Personal Identification Card List in addition to the Texas Voter's Registration List to populate its petit jury selection wheel. His argument then is not the same argument that he raises today. *Cf.*, (Cause No. 1:16-cr-26, document no. 138) and (document no. 19 at 41–45).

The Fifth Circuit has explained that the JSSA "is to be strictly construed, and failure to comply precisely with its terms forecloses a challenge." *United States v. Rosbottom*, 763 F.3d 408, 415 (5th Cir. 2014) (citing *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. Unit B, 1981), *cert denied*, *sub nom. Northside Realty Assoc., Inc., v. United States*, 456 U.S. 936 (1982)), *cert. denied*, 574 U.S. 1078 (2015). Any claim under the JSSA must be brought no later than the beginning of *voir dire*. *Rosbottom*, 763 F.3d at 415.

Congress used the plain language of "exclusive means" in Subsection (e) pertaining to the ability of a criminal defendant to challenge defects asserted under the JSSA. "It is obvious that the commencement of *voir dire* is the cut-off point for challenges under the Act," *United States v. Price,* 573 F.2d 356, 361 (5th Cir. 1978); *see also United States v. Pofahl,* 990 F.2d 1456, 1466 (5th Cir.), *cert. denied*, *sub nom. Nunn v. United States*, 510 U.S. 898 (1993), both under its express terms and because the only remedy it provides is a stay in the proceedings until a jury can be selected in conformity with the statute. 28 U.S.C. § 1867(d) ("If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title."). The language infers that Congress did not intend criminal defendants to raise any JSSA

challenges in proceedings beyond jury selection. Because Fackrell failed to comply with 28 U.S.C. § 1867(a), he is foreclosed from raising a claim under the JSSA, per 28 U.S.C. § 1867(e) here. *See United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109 (1986); *United States v. Green*, 742 F.2d 609, 612 (11th Cir. 1984). Accordingly, Fackrell has failed to establish a showing of a *prima facie* case for relief regarding his JSSA claim. His request to conduct discovery pertaining to his JSSA claim is denied.

E.      Not Entitled to Relief Under the Sixth Amendment

Fackrell also raises a challenge under the Sixth Amendment right to a venire pool selected from a jury wheel that represents a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1976). He states that his seated jury consisted of 11 white jurors, 1 Hispanic, and 0 African American jurors. In *Holland v. Illinois*, 493 U.S. 474, 482 (1990) (citing *Lockhart v. McCree*, 476 U.S. 162, 173 (1986)), the Supreme Court held:

> We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large." In *Taylor,* we "emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.

(internal citations omitted). The racial makeup of Fackrell's seated jury is not sufficient to establish that there was a distinctive group systematically excluded from the jury venire in his capital murder trial. Moreover, baldly asserting that the special jury wheel utilized in his capital murder trial excluded a distinctive group is not sufficient.

In his motion, Fackrell does not allege facts showing a specific claim for a Sixth Amendment fair cross-section of the community claim. He has asserted nothing more than a presumption that that his rights have been violated. "Conclusional allegations are insufficient to

16

warrant discovery; the petitioner must set forth specific allegations of fact." *Webster*, 392 F.3d at 802. Fackrell's conclusory statement that based on "information and belief" there are discrepancies in the jury venires of the Beaumont Division of the Eastern District of Texas is not sufficient to show good cause. He has not alleged facts showing that there was a distinctive group systematically excluded from the jury venire in his capital murder trial.

Moreover, baldly asserting that the special jury wheel utilized in his capital murder trial excluded a distinctive group is not enough. "[I]n order to establish a *prima facie* case, it [is] necessary for petitioner to show that the underrepresentation of [a distinctive group], generally and on his venire, was due to their systematic exclusion . . ." *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986) (quoting *Duren*, 439 U.S. at 366).

Fackrell has failed to make a *prima facie* showing of a right to relief regarding his Sixth Amendment fair cross-section of the community claims. Accordingly, he has not established good cause for discovery to be permitted under Rule 6(a) of the Section 2255 Rules. Fackrell's request to conduct discovery pertaining to his Sixth Amendment claim is without basis.

IV.    Conclusion

Under the circumstances described above, Fackrell fails to demonstrate that he is entitled to discovery under Rule 6, *Section 2255 Rules*. His conclusory allegations are an insufficient basis for the court to grant his *Motion to Inspect*. Furthermore, he fails to demonstrate good cause. It has long been recognized that Rule 6 does not "sanction fishing expeditions[.]" *Rector*, 120 F.3d at 562; *accord In re Robinson*, 917 F.3d 856, 865 n.14 (5th Cir. 2019), *cert. denied*, 522 U.S. 1120 (2020); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("[W]e have made clear that Rule 6 does not authorize fishing expeditions") (internal citation and quotation marks omitted). Consequently, Fackrell's motion for discovery must be rejected. It is therefore

**ORDERED** that Movant Ricky Allen Fackrell's *Motion to Inspect and Duplicate Court Records* (document no. 13) is **GRANTED IN PART** and **DENIED IN PART**. In accordance with Judge Crone's September 13, 2022 Amended Order (Cause No. 1:16-cr-26(02), document no. 783), Fackrell's motion is **GRANTED** to the extent that the Clerk of Court will release the jury wheel information on the "disk containing the electronic data for the wheel from which the venire was summoned, which was maintained by the court's IT staff" as discussed in Leigh Lyon's February 6, 2023 email to Fackrell's counsel (document no. 13-4 at 2). Within 45 days of this order, the Clerk of Court is directed to redact the first name, the street address, and the telephone number for each person listed on the jury wheel from which the venire was summoned before a copy of the information may be released to Fackrell's counsel. Counsel is reminded that Judge Crone's September 13, 2022 Amended Order stated:

> The court emphasizes that these documents may only be used for the purposes of Fackrell's habeas proceeding and shall not be used in any other case or for any other purpose. These documents are not to be disseminated outside the habeas team. Habeas counsel shall be responsible for ensuring that any copies have been returned to the court or destroyed within 30 days of the conclusion of the habeas proceedings.

(Cause No. 1:16-cr-26(02), document no. 783). This directive remains in effect and applies to the jury wheel information from which the venire was summoned, which was maintained by the court's IT staff" as discussed in Leigh Lyon's February 6, 2023 email to Fackrell's counsel. It is finally **ORDERED** that Fackrell's motion is **DENIED** in all other regards.

SIGNED this 28th day of March, 2024.

_____
Zack Hawthorn
United States Magistrate Judge